**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ERIN ALBERTS, TIMOTHY ALBERTS, ADAM CHRISTENSEN, LEAH CROHN, and MICHAEL PIETRANTONIO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CVS, INC. (CVS CAREMARK CORPORATION),<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:13-cv-12250 |

<u>**CLASS ACTION COMPLAINT**</u>

Plaintiffs Erin Alberts, Timothy Alberts, Adam Christensen, Leah Crohn, and Michael Pietrantonio (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their counsel, bring this Class Action Complaint against Defendant CVS, Inc. ("Defendant" or "CVS"). Plaintiffs, on their own behalf and on behalf of a class of similarly situated individuals, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## I.     NATURE OF THE ACTION

1.     Mass. Gen Laws ch. 93 § 105(a) addresses and prevents the misuse and improper collection of personal identification information by retailers, and recognizes that there is no legitimate need to obtain such personal information from credit card customers except to the extent it is strictly necessary to complete the transaction.

2.     Specifically, Mass. Gen Laws ch. 93 § 105(a) states that:

> No person, firm, partnership, corporation or other business entity that accepts a credit card for a business transaction shall write, cause to be written or require that a credit card holder write personal identification information, not required by the credit card issuer, on the credit card transaction form. Personal identification information shall include, but shall not be limited to, a credit card holder's address or telephone number.

3.      This action arises from CVS's violation of Mass. Gen Laws ch. 93 § 105(a) through its practice of requiring, as a condition of using a credit card to make a purchase, Plaintiffs' and the Class members' personal identification information, specifically their ZIP codes. This conduct constitutes violations of Mass. Gen Laws ch. 93A § 9.

4.      Accordingly, Plaintiffs bring this action on behalf of the below-defined Class and seeks statutory damages pursuant to Mass. Gen Laws ch. 93A § 9, double or treble damages pursuant to Mass. Gen Laws ch. 93A § 9, injunctive relief; and costs and attorneys' fees.

## II.      JURISDICTION AND VENUE

5.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).   In the aggregate, Plaintiffs' claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous class members who are citizens of states other than CVS's respective states of citizenship.

6.      This Court has personal jurisdiction over CVS because this action arises from CVS's transaction of business in Massachusetts. This Court also has personal jurisdiction over CVS because, at all relevant times, CVS was registered to do business in the State of Massachusetts and is therefore subject to general jurisdiction in this State.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), (2) and 1391(c) as CVS is deemed to reside in this District because it is subject to personal jurisdiction

here; a substantial part of the events and/or omissions giving rise to the claims emanated from activities within this District; and CVS conducts substantial business in this District.

### III.   PARTIES

*Plaintiffs*

8.      Erin Alberts is a natural person and citizen of the State of Massachusetts.

9.      Timothy Alberts is a natural person and citizen of the State of Massachusetts.

10.     Adam Christensen is a natural person and citizen of the State of Massachusetts.

11.     Leah Crohn is a natural person and citizen of the State of Massachusetts.

12.     Michael Pietrantonio is a natural person and citizen of the State of Massachusetts.

*Defendant*

13.     CVS is a corporation incorporated and existing under the laws of the State of Delaware with its principal place of business located at 1 CVS Drive, Woonsocket, Rhode Island 02895. CVS conducts business throughout the United States and Massachusetts. Pursuant to 28 U.S.C. 1332(c), CVS is a citizen of the States of Rhode Island and Delaware.

### IV.   FACTUAL BACKGROUND

*CVS's Unlawful Collection of PII*

14.     Plaintiff Erin Alberts purchased items at a CVS retail store locations in Falmouth, Massachusetts on July 16, 2011; Hyannis, Massachusetts, on November 7, 2012; Reading, Massachusetts on June 17, 2010, August 17, 2010, and November 8, 2012; Wakefield, Massachusetts on December 28, 2012; and Woburn, Massachusetts on December 24, 2009 and June 28, 2012.

15.     Plaintiff Timothy Alberts purchased items at a CVS retail store locations in Falmouth, Massachusetts on July 7, 2012; Mashpee, Massachusetts on July 18, 2011; Reading,

Massachusetts on June 6, 2009, June 25, 2011, May 13, 2012, and April 2, 2013; Wakefield, Massachusetts on April 22, 2011; and Woburn, Massachusetts on June 4, 2012.

16.     Plaintiff Adam Christensen purchased items at a CVS retail store location in Boston, Massachusetts on February 3, 2012, February 23, 2012, March 25, 2012, April 4, 2012, April 6, 2012, April 8, 2012, June 18, 2012, August 6, 2012, August 16, 2012, and August 17, 2012; Brookline, Massachusetts on April 11, 2012, April 19, 2012, April 26, 2012, June 19, 2012, July 1, 2012, July 11, 2012, July 30, 2012, August 5, 2012, August 31, 2012, December 7, 2012, December 21, 2012, and December 27, 2012; Cambridge, Massachusetts on February 25, 2012; Melrose, Massachusetts on October 3, 2012, November 11, 2012, December 4, 2012, December 16, 2012, and January 10, 2013; Natick, Massachusetts on June 23, 2012; Newton, Massachusetts on June 3, 2012; and Wakefield, Massachusetts on January 30, 2013.

17.     Plaintiff Leah Crohn purchased items at a CVS retail store location in Beverly, Massachusetts on June 20, 2012; Boston, Massachusetts on November 5, 2011; Cambridge, Massachusetts on July 14, 2011; Gloucester, Massachusetts, January 6, 2012; and Salem, Massachusetts on February 7, 2012 and August 24, 2012.

18.     Plaintiff Michael Pietrantonio purchased items at a CVS retail store location in Saugus, Massachusetts on February 7, 2010; and Wakefield, Massachusetts on December 11, 2009, February 10, 2010, February 23, 2010, March, 11, 2010, March 29, 2010, April 14, 2010, April 21, 2010, May 12, 2010, May 26, 2010, July 13, 2010, July 25, 2010, September 12, 2010, September 21, 2010, October 11, 2010, October 23, 2010, October 24, 2010, November 22, 2010, November 23, 2010, November 27, 2010, December 1, 2010, March 27, 2011, May 6, 2011, May 18, 2011, May 24, 2011, December 10, 2012, and December 23, 2012.

19.     On numerous occasions between June 6, 2009 and April 2, 2013, Plaintiffs shopped and purchased items at CVS retail store locations throughout Massachusetts.

20.     To consummate each purchase, Plaintiffs elected to use, and did use, credit cards as their form of payment.

21.     As a condition of using their credit cards, Plaintiffs were required by CVS to enter personal identification information associated with the credit card, including their full and complete zip codes. CVS would not allow Plaintiffs to complete their purchases without supplying such information.

22.     CVS is not required by credit card issuers to require this information from consumers.

23.     CVS recorded Plaintiffs' zip code into an electronic credit card transaction form. CVS continues to store Plaintiffs' personal identification information, including Plaintiffs' names, zip codes, and credit card numbers, in its databases.

24.     The Supreme Judicial Court of Massachusetts has determined that a zip code constitutes personal identification information ("PII") within the meaning of Mass. Gen Laws ch. 93 § 105(a). *See Tyler v. Michaels Stores, Inc.*, 2013 Mass. LEXIS 40 (2013).

25.     ***Receipt of Unwanted Marketing Materials***

26.     Subsequent to Plaintiffs' purchases at CVS – detailed above – Plaintiffs received unwanted marketing materials from CVS via United States Mail.

27.     ***CVS Sells Consumers' PII for profit***

28.     CVS's website states that CVS sells consumers' PII – including Plaintiffs' and the Class' PII – to third-parties for profit:

>      (a) CVS Caremark may share your personally identifiable information with third party companies to provide you with

technologies, services, or content that may be of interest to you, or to assist us in fulfilling your orders.[1]

***Consumers Place a High Value on Their PII***

29.     At a Federal Trade Commission ("FTC") public workshop in 2001, then-Commissioner Orson Swindle described the value of a consumer's personal information as follows:

    a.  The use of third party information from public records, information aggregators and even competitors for marketing has become a major facilitator of our retail economy.  Even [Federal Reserve] Chairman [Alan] Greenspan suggested here some time ago that it's something on the order of the life blood, the free flow of information.[2]

    b.

30.     Though Commissioner Swindle's remarks are more than a decade old, they are even more relevant today, as consumers' personal data functions as a "new form of currency" that supports a $26 billion per year online advertising industry in the United States.[3]

31.     The FTC has also recognized that consumer data is a new – and valuable – form of currency.  In a recent FTC roundtable presentation, another former Commissioner, Pamela Jones Harbour, underscored this point by observing:

    a.  Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable.  Data is currency.  The larger the data set, the greater potential for analysis – and profit.[4]

---

[1] *CVS, Inc. Privacy Policy, CVS Website*, http://www.cvs.com/help/privacy_policy.jsp

[2] *The Information Marketplace: Merging and Exchanging Consumer Data*, http://www.ftc.gov/bcp/workshops/infomktplace/transcript.htm (last visited May 20, 2012).

[3] *See Web's Hot New Commodity: Privacy*, http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited May 20, 2012).

[4] *Statement of FTC Commissioner Pamela Jones Harbour* (Remarks Before FTC Exploring Privacy Roundtable), http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited May 20, 2012).

(1)

32.     Recognizing the high value that consumers place on their PII, many companies now offer consumers an opportunity to sell this information to advertisers and other third parties. The idea is to give consumers more power and control over the type of information that they share – and who ultimately receives that information. By making the transaction transparent, consumers will make a profit from the surrender of their PII.[5] This business has created a new market for the sale and purchase of this valuable data.[6]

33.     In fact, consumers not only place a high value on their PII, but also place a high value on the *privacy* of this data. Thus, the question is not *whether* consumers value such privacy; the question is "*how much* [consumers] value" that privacy.[7]

34.     Researchers have already begun to shed light on how much consumers value their data privacy – and the amount is considerable. Indeed, studies confirm that "when [retailers'] privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[8]

35.     Consumers thus value their personal data highly, and place an economic value on the privacy of that data. In fact, when consumers were surveyed as to how much they valued their

---

[5] *You Want My Personal Data? Reward Me for It*,
http://www.nytimes.com/2010/07/18/business/18unboxed.html (last visited May 20, 2012).

[6] *See Web's Hot New Commodity: Privacy*,
http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited May 20, 2012).

[7] Hann *et al.*, *The Value of Online Information Privacy: An Empirical Investigation* (Mar. 2003) at 2, *available at* http://www.comp.nus.edu.sg/~ipng/research/privacy.pdf (emphasis added) (last visited April 25, 2012).

[8] Tsai, Cranor, Acquisti, and Egelman, *The Effect of Online Privacy Information on Purchasing Behavior*, 22(2) Information Systems Research 254, 254 (June 2011).

personal data in terms of its protection against improper access and unauthorized secondary use, they valued 1) the restriction of improper access to their data at between $11.33 and $16.58 per website, and 2) prohibiting secondary use to between $7.98 and $11.68 per website.[9]

## V.   CLASS ACTION ALLEGATIONS

36.     Plaintiffs bring Count I, as set forth below, on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as

> a. All persons from whom CVS requested and recorded personal identification information in conjunction with a credit card transaction occurring in Massachusetts (the "Class").
> b.

37.     Excluded from the Class are CVS and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

38.     Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

39.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of the class are so numerous that individual joinder of all Class members is impracticable. On information and belief, there are thousands of consumers who have been affected by CVS's wrongful conduct. The precise number of the Class members and their addresses is presently unknown to Plaintiffs, but may be ascertained from CVS's books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice

---

[9] *Id.*

dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

40.   **Commonality and Predominance – Federal  Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a.   whether CVS engaged in the conduct as alleged herein;

    b.   whether CVS's conduct constitutes violations of Mass. Gen Laws ch. 93 § 105(a) and Mass. Gen Laws ch. 93A § 9;

    c.   whether Plaintiffs and the other Class members are entitled to statutory, or other forms of damages, and other monetary relief and, if so, in what amount(s); and

    d.   whether Plaintiffs and other Class members are entitled to equitable relief, including but not limited to injunctive relief and restitution.

41.   **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform misconduct described above.

42.   **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4)**.  The named Plaintiffs are an adequate representative of the Class because their interests do not conflict with the interests of the other Class members they seek to represent; they have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously.  The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

43.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**
CVS has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class
members, thereby making appropriate final injunctive relief and declaratory relief, as described
below, with respect to Class members as a whole.

44.     **Superiority – Federal Rule of Civil Procedure 23(b)(3)**.   A class action is
superior to any other available means for the fair and efficient adjudication of this controversy,
and no unusual difficulties are likely to be encountered in the management of this class action.
The damages or other financial detriment suffered by Plaintiffs and the other Class members are
relatively small compared to the burden and expense that would be required to individually
litigate their claims against CVS, so it would be impracticable for Class members to individually
seek redress from CVS's wrongful conduct.   Even if Class members could afford individual
litigation, the court system could not. Individualized litigation creates the potential for
inconsistent or contradictory judgments, and increases the delay and expense to all parties and the
court system. By contrast, the class action device presents far fewer management difficulties, and
provides the benefits of single adjudication, economy of scale, and comprehensive supervision by
a single court.

## VI.   CLAIMS ALLEGED

### COUNT I
**Violation of Massachusetts Unfair Trade Practices Act**
**Mass. Gen. Laws ch. 93A**
**(On behalf of Plaintiffs and the Class)**

45.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

46.     Mass. Gen Laws ch. 93 § 105(a) provides:

> No person, firm, partnership, corporation or other business entity that
> accepts a credit card for a business transaction shall write, cause to be
> written or require that a credit card holder write personal identification
> information, not required by the credit card issuer, on the credit card

transaction form. Personal identification information shall include, but shall not be limited to, a credit card holder's address or telephone number.

47.     CVS is a corporation that accepts credit cards for retail transactions.

48.     Through the practices detailed above, CVS has violated, and continues to violate, Mass. Gen Laws ch. 93 § 105.

49.     Mass. Gen. Laws ch. 93 § 105(c) provides that: "Any violation of the provisions of this chapter shall be deemed to be an unfair and deceptive trade practice, as defined in section 2 of chapter 93A."

50.     Accordingly, CVS's violations of Mass. Gen Laws ch. 93 § 105 constitute unfair and deceptive trade practices within the meaning of Mass. Gen Laws ch. 93A § 2.

51.     Mass. Gen Laws ch. 93A § 9 provides:

> Any person … who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two … may bring an action in the superior court … for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper …. Any persons entitled to bring such action may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons.

52.     Plaintiffs and the members of the Class have been injured by CVS's collection of their zip codes in connection with their credit card transactions and resultant violations of Mass. Gen Laws ch. 93A § 9.

53.     <u>First</u>, Plaintiffs and the Class have been injured because they have received unwanted marketing materials from CVS as a result of having provided their zip codes when using credit cards at CVS.  <u>Second</u>, Plaintiffs and the Class have been injured by CVS's sale of Plaintiffs' and the Class' PII to third-parties, which was collected by CVS in violation of Mass.

Gen. Laws ch. 93 § 105(c). And <u>third</u>, Plaintiffs and the Class have been injured because CVS misappropriated their economically valuable PII without consideration.

54.     More than 30 days prior to filing suit, Plaintiffs made a pre-suit demand pursuant to Mass. Gen Laws ch. 93A § 9(3) (the "93A Demand"), in which Plaintiffs sought: class-wide relief limited to statutory damages of $25 pursuant to Mass. Gen Laws ch. 93A § 9, for each violation of Mass. Gen Laws ch. 93 § 105; injunctive relief; and reasonable attorneys' fees and costs. CVS did not accept the terms of this demand. A true and correct copy of the 93A Demand is attached here as Exhibit A.

55.     CVS's failure to accept the terms of this demand was made in bad faith, because CVS has knowledge or reason to know that the practice complained of does, in fact, violate Mass. Gen Laws ch. 93 § 105 and Mass. Gen Laws ch. 93A § 9, and that Plaintiffs and the Class are entitled to the relief demanded as a matter of law.

56.     Accordingly, Plaintiffs and the Class are entitled to double or treble damages as a result of CVS's bad faith violations of Mass. Gen Laws ch. 93A § 9.

## VII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, requests that the Court enter an order and judgment in their favor and against CVS as follows:

a.   Certification of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3);

b.   Designation of Plaintiffs as representative of the proposed Class and designation of Plaintiffs' counsel as Class Counsel;

c.   Declaration that Defendant's actions, as described herein, violate Mass. Gen Laws ch. 93 § 105 and Mass. Gen Laws ch. 93A § 9;

d.   Awarding statutory damages of $25 pursuant to Mass. Gen Laws ch. 93A § 9, for each violation of  Mass. Gen Laws ch. 93 § 105;

e.  Doubling or trebling damages pursuant to Mass. Gen Laws ch. 93A § 9;

f.  Enjoining Defendant's continued violations of Mass. Gen Laws ch. 93 § 105, pursuant to Mass. Gen Laws ch. 93A § 9;

g.  Awarding Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees;

h.  Awarding Plaintiffs and the Class pre- and post-judgment interest; and

i.  Such other and further relief as may be just and proper.


Dated: September 11, 2013                    Respectfully submitted,

                                             ERIN ALBERTS, TIMOTHY ALBERTS, ADAM
                                             CHRISTENSEN, LEAH CROHN, AND
                                             MICHAEL PIETRANTONIO, on behalf of
                                             themselves and all others similarly situated


                                             By: _____
                                                 One of the Attorneys for Plaintiff
                                                 And the Proposed Putative Classes

Joseph J. Siprut*
*jsiprut@siprut.com*
SIPRUT PC
17 North State Street, Suite 1600
Chicago, Illinois  60602
Tel:  312.236.0000
Fax:  312.948.9196


Alexander Shapoval
*ashapoval@siprut.com*
SIPRUT PC
1 Winnisimmet Street
Chelsea, MA 02150
Tel: 617.889.5800
Fax: 617.884.3005


* *Pro Hac Vice* application to be submitted

4812-4268-2901, v. 1